IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES CHATMAN,

        Plaintiff,                    No. CIV S-03-2415 JAM EFB (TEMP) P

    vs.

T. FELKER, et al.,

        Defendants.            FINDINGS AND RECOMMENDATIONS

/

       Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. The court found plaintiff's second amended complaint appropriate for service against the following defendants for the following claims: Turner, Weaver and Goforth, insofar as the complaint alleges they ignored plaintiff's medical chronos and used or condoned excessive force; Dharlinque, insofar as the complaint alleges he retaliated against plaintiff for plaintiff's use of the grievance process; Roberts, insofar as the complaint alleges he ordered plaintiff be deprived of basic necessities and acted in retaliation for plaintiff's grievances and ignored plaintiff's medical chronos; Peddicord, Wright, and Amero insofar as the complaint alleges they ignored plaintiff's medical chronos; Beckman, insofar as the complaint alleged he acted in retaliation for plaintiff's use of the grievance process; Pantorolo insofar as the complaint alleges he acted in retaliation and confiscated plaintiff's medications and medical equipment;

1 Zills, insofar as the complaint alleges he acted in retaliation for plaintiff's use of the grievance
2 process; Rohlfing, insofar as the complaint alleges he failed to treat plaintiff's pain and cancelled
3 plaintiff's medical chronos; Runnels, insofar as the complaint alleges he ignored plaintiff's
4 complaints of constitutional violations; and Brown.

5      During the course of the litigation, the court has granted defendant Rohlfing's motion to
6 dismiss and dismissed defendants Brown and Dharlingue. *See* Dckt. Nos. 70, 76, 125.
7 Defendants Turner, Weaver, Goforth, Amero, Pontarolo, Zills and Runnels have now filed a
8 motion to dismiss on the ground that plaintiff has failed to exhaust administrative remedies as to
9 the claims against them. *See* Defs.' Mot. to Dism., Dckt. No. 139. Defendants Wright,
10 Peddicord and Roberts acknowledge that plaintiff properly exhausted administrative remedies as
11 to them. Defs.' Reply, Dckt. No. 150, at 2.

12 I. <u>Exhaustion Under The PLRA</u>

13      The Prison Litigation Reform Act (PLRA) provides that "no action shall be brought with
14 respect to prison conditions under section 1983 of this title, . . . until such administrative
15 remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" subject to
16 the exhaustion requirement have been defined broadly as "the effects of actions by government
17 officials on the lives of persons confined in prisons." 18 U.S.C. § 3626(g)(2); *Smith v. Zachary*,
18 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir.
19 2002). To satisfy the exhaustion requirement, a grievance must alert prison officials to the
20 claims the plaintiff has included in the complaint, but need only provide the level of detail
21 required by the grievance system itself. *Jones v. Bock*, 549 U.S. 199, 218-219 (2007); *Porter v.*
22 *Nussle*, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials
23 "time and opportunity to address complaints internally before allowing the initiation of a federal
24 case").

25      Prisoners who file grievances must use a form provided by the Department of Corrections
26 and Rehabilitation, which instructs the inmate to describe the problem and out line the action

requested. The grievance process, as defined by California regulations, has one informal and three formal levels of review to address an inmate's claims, subject to certain exceptions. *See* Cal. Code Regs. tit. 15, §§ 3084.1-3084.7. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. Cal. Code Regs. tit. 15, § 3084.5.

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). However, an inmate is required to exhaust those remedies that are available; for a remedy to be "available," there must be the "possibility of some relief. . . ." *Booth*, 532 U.S. at 738. Relying on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

Although a motion to dismiss for failure to exhaust administrative remedies prior to filing suit are normally brought under Rule 12(b) of the Federal Rules of Civil Procedure, *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), when ruling on such a motion requires the court to look beyond the pleadings in the context of disputed issues of fact the court must do so under "a procedure closely analogous to summary judgment." *Id.* 1119, n.14. Because care must be taken not to resolve credibility on paper as it pertains to disputed issues of material fact, the undersigned applies the standards applicable under Rule 56 to exhaustion motions which require consideration of materials extrinsic to the complaint. *See Chatman v. Felker*, 2010 WL 3431806 at 2-3 (E.D. Cal., August 31, 2010).

Defendants bear the burden of proving plaintiff's failure to exhaust. *Id*. at 1119. To bear this burden:

3

> a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case,. . . . With regard to the latter category of evidence, information provided the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

*Brown* at 936-37.

II. <u>Analysis–Exhaustion</u>

    A.  Defendant Amero

Plaintiff alleges that when he was released from administrative segregation to C-Facility, defendant Amero "had his subordinates physically manhandle plaintiff by cuffing him from behind despite having a medical chrono to the contrary and physically pushing plaintiff into a cell where he had no bottom bunk access despite having a medical chrono to the contrary." Plaintiff told Amero about the chronos, but Amero said he didn't care. Amended Complaint (Am. Compl.) § 27.

On April 9, 2003, plaintiff filed a 602, which was assigned Log No. HDSP-03-0849. Defs.' Mot. to Dism., Decl. of T. Robertson (Robertson Decl.) § 7 & Ex. 4 (grievance). Plaintiff asked to be transferred back to a 270 degree-design yard and to be placed in a single cell and that defendant Amero be disciplined for attacking him. Ex. 4 at 16.[1] In conjunction with this grievance, plaintiff submitted an "Allegation of Misconduct By Peace Officer." Ex. 4 at 19.

The informal level was bypassed and the grievance was assigned to the first level for review. The first level response was issued on April 29, 2003, signed by Associate Warden M.D. McDonald. Mot. to Dism., Ex. 5 McDonald concluded that "the allegations made by you

---

[1] The court refers to the pagination assigned by its ECF system.

4

in regards to the claim of misconduct on the part of Correctional Sergeant Amero . . . were unsubstantiated. All allegations of staff misconduct were reviewed and evaluated to determine if the evidence supports the accusations." Ex. 5 at 21. McDonald denied plaintiff's "request for reprimand of these staff members is denied," as was his request for transfer to a 270-design yard. Id. He concluded "your appeal has been partially granted in that the staff investigation into your allegations has been completed, but unsubstantiated" and noted that if dissatisfied, plaintiff could "appeal to the Second Level by following the instructions on your appeal form." *Id*. at 22.

Plaintiff pursued a second level review. The section for requesting a second level determination says, "If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution . . . Appeals Coordinator. . . ." Mot. to Dism., Ex. 4 at 17. Plaintiff wrote, "since my arrival on the C-yard, I have been threaten [sic] by Lt. C. Beckman and harassed by C/O Pontarolo for using the appeal system against fellow officers on both the B & D yards. Future harassments is [sic] inevitable . . . ." Ex. 4 at 17; Pl.'s Opp'n, Decl. of Charles Chatman (Chatman Decl.) ¶¶ 22, 23. He received a "screen-out" form, dated June 13, 2003, which said that"Your original appeal issue concerned ICC of 3/27/03. However, in appealing to the second formal level, you have changed your appeal issue to include Lieutenant Beckman[.]" [2] Under the heading "Abuse of the Appeal Process," a box next to the printed words "You are attempting to change your original appeal issue" is checked. Ex. 6; *see also* Decl. of T. Robertson (Robertson Decl.) ¶ 7.

The grievance form itself does not reflect that any action was taken on the second level. Even so, on June 22, 2003[3], plaintiff sought a third-level review: "I am still subjected to the same conditions, as Appeals Coordinator H. Wagner is trying to sabotage the appeal by denying me access to be heard on the Second Level response." Ex. 4 at 17. Defendants provide a

---

[2] The rest of the text is cut off on the photocopy.

[3] Again, a portion of the form is cut off; the court believes it is dated June 22, 2003.

1  declaration by D. Foston, Chief of the Inmate Appeals Branch, who avers that he undertook
2  search of the database at the IAB to determine whether Chatman filed an appeal accepted at the
3  third level concerning Amero's actions. Mot. to Dism., Decl. of D. Foston (Foston Decl.) ¶¶ 4.
4  He does not address what this search revealed about any grievances concerning defendant
5  Amero. Foston Decl. ¶ 6. Plaintiff concedes that he did not secure a Director's Level decision
6  on this grievance, but argues that he attempted to do so by sending the screened-out grievance to
7  the IAB, which returned it to him because he had not completed the second level. The rejection
8  letter instructed plaintiff to contact the appeals coordinator and "comply with instructions from
9  that office" if he disagreed with the second level rejection. Pl.'s Opp'n., Chatman Decl. ¶ 29 &
10 Ex. B7, 9. After that, plaintiff sent a copy of this letter and his 602 to the appeals coordinator;
11 the grievance was again screened out because of the attempt to change the appeal issue. Pl.'s
12 Opp'n., Chatman Decl. ¶ 31 & Ex. B 10-11; Mot. to Dism., Ex. 7.

13       Defendants argue that plaintiff's attempt to change the focus of his grievance resulted in
14 its being screened out and ultimately not accepted at the Director's Level, which renders the
15 claim against defendant Amero unexhausted. Plaintiff counters that the regulations do not
16 prohibit an inmate from changing the issue during the grievance process, and therefore the
17 screen-out was improper and rendered further remedies unavailable. Plaintiff is mistaken.

18       The Ninth Circuit has recognized that a prisoner may be unable to exhaust if a grievance
19 is improperly screened out because the improper action would render the grievance system
20 unavailable. *See Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010). The court continued:

21           To fall within this exception, a prisoner must show that he
             attempted to exhaust his administrative remedies but was thwarted
22           by improper screening. In particular, the inmate must establish
             that he actually filed a grievance or grievances that, if pursued
23           through all levels of administrative appeals, would have sufficed to
             exhaust the claim that he seeks to pursue in federal court, and (2)
24           that prison officials screened his grievance or grievances for
             reasons inconsistent with or unsupported by applicable regulations.
25

26 *Id*. at 823-824. In *Sapp*, the court recognized that screen-out is proper when it is based on an

6

attempt to add or change the issue at the second level of review. In that case, the plaintiff had first raised his medical care issue at the second level of an unrelated appeal. The Court said:

> [P]rison officials declined to consider a complaint about Sapp's eye condition that he raised for the first time in a second-level appeal about medical care for a skin condition. There, officials explained that the eye issue had to be raised in a separate appeal, starting at the first level. This screening was proper; an inmate must first present a complaint at the first level of the administrative process. See Cal.Code Regs. tit. 15, § 3084.5.

*Sapp*, 623 F.3d. at 825. The screen-out notice in this case was proper.

Plaintiff claims, however, that he "never changed the content of [the] 602 appeal against Defendant Amero that warranted rejection. . . ." Chatman Decl. ¶ 29. This claim in disingenuous; in the section of the form for a description of the reasons for seeking a second level review, plaintiff said nothing about defendant Amero. Despite his conclusory claims now, he in fact changed the content of the grievance. It was properly screened out.

B. Defendant Pontarolo

Plaintiff alleges that defendant Pontarolo[4] confiscated plaintiff's legal documents, medication and medical appliances in retaliation for an earlier grievance. Am. Compl ¶ 31. He filed a 602 on May 8, 2003. It was assigned Log No. HDSP 903-1141. Mot. to Dism., Ex. 8. He withdrew it when Lt. Stafford promised that the items would be returned. *Id*. & Ex. 9; Robertson Decl. ¶ 7. Plaintiff avers that when the property was not returned, he sent letters to Lt. Stafford and Defendant Pontarolo but did not receive a reply. Chatman Decl. ¶ 39.

Plaintiff reinstated the appeal on June 29, 2003, specifically noting that he had withdrawn the earlier grievance because Sergeant Harnden "promised to retrieve my court transcripts and knee brace that same day, which never happened. On two occasions since that time I asked him for the above mentioned property, to no avail, which prompted this complaint." Mot. to Dism., Ex. 10; Chatman Decl. ¶¶ 39-40. This grievance was screened out as a duplicate of the appeal

---

[4] He is identified as "Panerlo" in the amended complaint. Am. Compl. at 14, ¶ 31

7

plaintiff had withdrawn. Robertson Decl. ¶¶ 8 & Exs. 8-11. Plaintiff's attempts to send this screened-out grievance to the Inmate Appeals Branch were again rebuffed. Pl.'s Opp'n., C-16 (copy of grievance stamped "Received July 14, 2003, Inmate Appeals Branch" & also stamped "Rejected"). [5]

In *Harvey v. Jordan*, 605 F.3d 681 (9th Cir. 2010), the inmate plaintiff filed a grievance complaining that he had not received a timely hearing on a rules violation report. The first level response to the grievance assured him that he would be given a hearing and access to a videotape of the cell search which prompted the RVR. He did not seek review of the decision. When, five months later, he had not received the promised hearing, he filed another grievance, complaining that he "'would like this 115 heard. . . .'" *Id*. at 685. The appeals coordinator screened this grievance out as untimely. *Id*. Plaintiff ultimately filed suit, but defendant filed a motion to dismiss for failure to exhaust, arguing that the inmate "should have appealed the . . . decision granting him a hearing and access to the videotape." *Id*. The Ninth Circuit disagreed:

> An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to obtain relief. Nor is it the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised.
>
> . . . .Once the prison officials purported to grant relief with which [the inmate] was satisfied, his exhaustion obligation ended. His complaint had been resolved, or so he was led to believe, and he was not required to appeal the favorable decision.

*Id*. (internal citations omitted).

In reaching this result, the Ninth Circuit relied on *Abney v. McGinnis*, 380 F.3d 663, 665-66 (2d Cir. 2004), a case in which the plaintiff filed several grievances regarding orthopedic footwear. Several times the grievance committee accepted his grievances and scheduled

---

[5] Plaintiff says he attempted to appeal the issue one more time: on August 30, 2003, he filed a third 602 after defendant Pontarolo gave plaintiff some transcripts but withheld other legal materials. Chatman Decl. ¶¶ 43-44. This grievance was also screened out because plaintiff had not attempted to resolve it at the informal level and because he had not attached a form. It is not clear that this raises the same issue as that presented in the complaint.

8

appointments with the podiatry department or directed that various footwear be provided for him. Over the course of several years, plaintiff received ill-fitting shoes and arch supports. He eventually filed a civil rights action, complaining about the problems in securing the proper footwear. The defendants moved to dismiss, alleging plaintiff had not exhausted his administrative remedies because he had not appealed the resolution of his grievances. The Second Circuit disagreed, finding it impractical to require prisoners to anticipate that the resolution of the grievance would not be honored in order to meet the four-day appeal deadline applicable in that case. It continued:

> Where, as here, prison regulations do not provide a viable mechanism for appealing implementation failures, prisoners in Abney's situation have fully exhausted their available remedies. A prisoner who has not received promised relief is not required to file a new grievance where doing so may result in a never-ending cycle of exhaustion.

*Id.* at 669; *compare Dixon v. Page*, 291 F.3d 485, 490-91 (7th Cir. 2002) (finding prisoner who had been granted relief in a grievance nevertheless had failed to exhaust; regulations provided a separate appeal system for implementation failures, which he had not utilized).

In this case, plaintiff withdrew his grievance because he had been promised his material. When he did not receive what he sought, he attempted to file another grievance, only to be told, as in *Harvey*, that this second grievance was improper. Defendants have not suggested what remedies remained available for plaintiff to seek relief from this implementation failure. The court finds this claim exhausted.

C. <u>Defendant Zills</u>

In the amended complaint plaintiff alleges that defendant Zills attempted to recruit gang members to assault plaintiff and searched his cell, leaving it in disarray, both in retaliation for plaintiff's use of the grievance system. Am. Compl. ¶¶ 33.

Plaintiff filed a grievance, which was assigned Log No. HDSP 03-1259. Robertson Decl. ¶ 10 & Ex. 14. In the section labeled "Action Requested," plaintiff wrote "an immediate ISU

9

investigation. Cessation of harassment. Departmental Charges filed. Separation for the safety of the facility. No further retaliation for this complaint." Ex. 14. The first level decision said:

> The review revealed allegations made by you in regards to the claim of misconduct on the part of Officer Zills could not be substantiated. All allegations of staff misconduct are reviewed and evaluated to determine if the evidence supports the allegations.
>
> If any misconduct by the employees connected with your complaint was discovered during this review, the appropriate corrective measures have been taken. The request for an investigation to not be harassed and no retaliation is considered granted. The request for department charges to be filed and separation is denied.
>
> Based on the information above, your appeal has been Partially Granted.

Mot. to Dism., Ex. 15. Plaintiff requested a second level review and explained his "reasons for requesting a Second-Level Review" as follows:

> During the interview Sgt. Townsend refused to summon my witnesses that C/O Zills confided in to solicit physical harm against me. As such, the investigation was tainted with prejudice.

Pl.'s Opp'n., Ex. C-2; Chatman Decl. ¶ 33. This was screened out at the second level. The box next to "Abuse of the Appeal Process" was checked and phrase "request witness was interviewed by Sgt. Townsend for factfinding" was hand written on the form. Under the general "abuse" heading, the box next to "you are attempting to change your original appeal issue" was checked and an additional handwritten explanation was included: "staff complaint on C/O Zills to allegations against Sgt. Townsend." Mot. to Dism., Ex. 16. On August 3, 2003, plaintiff sent a letter to the Chief of the Inmate Appeals Branch, complaining that this grievance and another had been screened out improperly. Chatman Decl. ¶ 35 & Ex. C-6. The IAB returned these to plaintiff, instructing him to contact the Appeals Coordinator at the institution if he disagreed with the determination below and advising him that the appeal must be completed through the second level before IAB would consider it. Pl.'s Opp'n., Ex. C-8. Plaintiff resubmitted the

grievance, but it was screened out again, because he had not resubmitted the appeal with the prescribed time constraints, had not complied with instructions, and because he was attempting to change the appeal issue from C/O Zills' to C/O Townsend's misconduct. *Id*., Ex. C-10.

Plaintiff argues again that the regulations do not proscribe changing an appeal issue at the second level. As noted above, the Ninth Circuit has held that it is not proper to raise a new issue at the second level. In this case, however, plaintiff did not attempt to raise a new issue. He mentions Sgt. Townsend, who conducted the investigation, but his focus is on the investigation and its exoneration of defendant Zills. His dissatisfaction was with the result of the investigation, something he attributed to the fact finding process. He suggested that a proper investigation would not have exonerated C/O Zills and his dissatisfaction was with the result of the investigation he requested. His pursuit of this grievance would have exhausted his claim against defendant Zills.

D. Defendants Turner, Weaver and Goforth

Plaintiff alleges that defendant Weaver assaulted him while defendants Turner and Goforth looked on but did nothing. Am. Compl. ¶ 19. He further alleges that as the officers escorted plaintiff to the program office, defendant Goforth twisted plaintiff's arms while defendant Turner did nothing to stop him. *Id.* In addition, they allegedly ignored plaintiff's medical chronos for a lower bunk and a single cell. *Id.* According to T. Robertson, plaintiff did not file a grievance about this incident; according to D. Foston, no appeals relating to this conduct reached the Director's Level. Robertson Decl. ¶¶ 5, 11; Foston Decl. ¶¶ 4, 6.

Plaintiff alleges that on March 16, 2003, the day after the incident with these three defendants, he was placed in administrative segregation (ad/seg.) and not given writing materials or stationery. Chatman Decl. ¶¶ 4-5. He secured a grievance form, paper, envelopes and writing implements on March 23, 2003, and prepared a 602 concerning defendants Weaver, Goforth and Turner for the alleged assault. Chatman Decl. ¶¶ 6-7. He put the 602 in an envelope addressed to Appeals Coordinator Wagner and gave it to the housing officer that evening. Chatman Decl.

11

¶ 8. When he received no response, he wrote to defendant Runnels, complaining that he had not received any acknowledgment that his grievance had been received. Chatman Decl. ¶9 & Ex. A-2. Defendant Felker replied that the letter to the warden was an attempt to circumvent the appeals process, that the Appeals Office had received several grievances, and plaintiff should "utilize the existing administrative remedy by submitting your CDC-602 and placing it in your assigned housing unit appeals box. . . ." Ex. A-3 & Chatman Decl. ¶ 10. Thereafter, plaintiff wrote to Appeals Coordinator Wagner asking about the 602 against Weaver, Turner and Goforth. Chatman Decl. ¶11 & Exs. A-4. Wagner responded that the "appeal you refer to was received 3/28/03, screened out and returned to you as a duplicate." Ex. A-5; Chatman Decl. ¶ 12. Chatman wrote back to Wagner in an attempt to explain that his notice had not been responsive to plaintiff's letter, because it confused his grievance against defendants Weaver, Turner and Goforth with a different grievance. Chatman Decl. ¶ 13 & Ex. A 6-7.

Plaintiff wrote to a number of other people about his grievances. Chatman Decl. ¶ 14. He received a response from Defendant Runnels, who noted that a fact-finding investigation concerning his allegations against defendants Weaver and Turner was conducted by Lt. Peck and completed on April 17, 2003. Runnels wrote that plaintiff's allegations "could not be sustained." Exs. A-8-10.

In addition, plaintiff was interviewed by Captain Randy Johnson, who advised plaintiff to resubmit the grievance. Chatman Decl. ¶¶14-15 & Ex. A-12-13. Plaintiff sent the grievance to Captain Johnson on June 27, 2003, but it was screened out as untimely and as a duplicate on June 30, 2003. Chatman Decl. ¶¶ 16-17 & Ex. A-17. He sent the grievance, along with some others, to the Inmate Appeals Branch, but they were returned because they had not been processed through the second level. Chatman Decl. ¶ 18 & Ex. A-18-20. Chatman wrote again to the Appeals Coordinator about the screened out appeals and received additional screen out notices. Chatman Decl. ¶ 19 & Exs. A-21-22.

////

Plaintiff argues that his attempts to utilize the grievance system were thwarted when he did not receive a response to his grievance, which may have disappeared. Defendants counter that there is no evidence plaintiff ever submitted a grievance about this incident. They do not address Lt. Peck's investigation or suggest how that might have been triggered without plaintiff's submitting a 602, nor do they provide a declaration or other information from Captain Jackson to counter plaintiff's showing that he pursued the lost grievance and resubmitted it when asked to by prison authorities. Moreover, they have not presented the screen-out form that Wagner mentioned in his communication of May 27, 2003 or Log. No. 03-00613, which Wagner suggests raised the same issues. *See* Pl.'s Opp'n., Ex. A-5.

In this case, plaintiff has presented evidence that he prepared a timely grievance about Weaver, Turner and Goforth and, when he did not receive a response, attempted to pursue that grievance through a number of channels. It is defendants who bear the burden of proof on this affirmative defense and they have not demonstrated any remedies remained available to plaintiff. *See Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006) (when plaintiff's grievance was lost by correctional officials and regulations were not clear how to proceed when timely grievance was lost available remedies were exhausted); *Sutherland v. Herrmann*, 2010 WL 2303206 at 5 (E.D. Cal. 2010) (defendants did not meet burden of demonstrating failure to exhaust when they did not squarely refute plaintiff's claim that he filed a grievance). The court finds the claims against Weaver, turner and Goforth to be exhausted.

### E. Defendant Runnels

Plaintiff alleges that defendant Runnels ignored his many complaints that his rights were being violated at High Desert State Prison. *See, e.g.*, Am. Compl. ¶ 28. Neither T. Robertson nor D. Foston found evidence that plaintiff filed any grievance alleging that defendant Runnels took no action after being notified that plaintiff's rights were being violated. Mot. to Dism., Foston Decl. ¶¶ 4, 6; Robertson Decl. ¶¶ 5, 11. Plaintiff counters that he "personally wrote numerous letters to Defendant Runnels about the defendants herein this action subjecting me to

13

cruel and malicious punishment. . . ." but that Runnels told plaintiff "to stop writing to his office and to handle the matter through the grievance process, even after I'd demonstrated the harassment was the result for using the appeal system." Chatman Decl. ¶¶ 50-51.  Plaintiff argues that there was no reason to name defendant Runnels in any appeals because "the only criteria is putting officials on notice of the acts committed against me." Chatman Decl. ¶ 53.

Whether or not it is necessary to name a particular defendant in a grievance is not the issue here.  Under the PLRA, plaintiff must use the grievance system to put prison officials on notice: giving notice through other channels is not adequate. *Lanier v. Gonzales*, 2010 WL 4791656 at 3 (E.D. Cal. 2010) (letter to the warden does not exhaust remedies); *Houze v. Segarra*, 217 F.Supp.2d 394, 398-99 (S.D.N.Y. 2002) (letter to Inspector General did not exhaust remedies).  Plaintiff's letters were not a substitution for complying with the required process for presenting a grievance under the prison's grievance procedures.  The claim against Runnels is not exhausted.

Accordingly, it is hereby RECOMMENDED that:

1. Defendants' motion to dismiss, Dckt. No. 139, be granted as to defendants Amero and Runnels and denied as to defendants Zills, Pontarolo, Turner, Weaver, and Goforth; and

2. Plaintiff be directed to file an amended pretrial statement within thirty days; and

3. All remaining defendants (Turner, Weaver, Goforth, Roberts, Pedicard, Wright, Beckman, Pontarolo, and Zilis) be directed to file their pretrial statement within twenty-one days of service of plaintiff's.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v.*

14

1  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

2  DATED: February 2, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE